Duane L. Loft*
Email: duane.loft@pallasllp.com
Brianna Hills Simopoulos*
Email: brianna.simopoulos@pallasllp.com
John McAdams*
Email: john.mcadams@pallasllp.com
**PALLAS PARTNERS (US) LLP**
75 Rockefeller Plaza
New York, New York 10019
Tele.: (212) 970-2300

Michelle L. Gearhart, SBN: 263573
Email: gearhart@ammcglaw.com
**ADAMSKI MOROSKI MADDEN
CUMBERLAND & GREEN LLP**
*Mailing Address*: Post Office Box 3835
San Luis Obispo, CA  93403-3835
*Physical Address*: 6633 Bay Laurel Place
Avila Beach, CA  93424
Tele.: (805) 543-0990; Fax: (805) 543-0980

*Pro hac vice application forthcoming*

Counsel for Petitioners

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re Application of<br><br>FOURWORLD EVENT OPPORTUNITIES, LP and GENESIS EMERGING MARKETS INVESTMENT COMPANY,<br><br>Petitioners, for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery For Use In a Foreign Proceeding. | Case No.: _____<br><br>**APPLICATION FOR AN ORDER OF JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782**<br><br>**Date:**<br>**Time:**<br>**Dept.:**<br><br>District Judge:<br>Magistrate Judge: |

# TABLE OF CONTENTS

APPLICATION ................................................................................6

BACKGROUND .............................................................................8

    A.    Parties to the Foreign Proceeding .........................................8

    B.    The Merger..........................................................................8

    C.    Petitioners' Cayman Islands Appraisal Proceeding............11

    D.    Discovery in the Cayman Islands Appraisal roceeding......11

    E.    Respondent and the Discovery Sought ...............................12

ARGUMENT ................................................................................13

I.    The Application Satisfies the Three Statutory Requirements of 28 U.S.C. § 1782. .........................................................................14

    A.    Respondent "Resides" or "is Found" in This District.........14

    B.    The Discovery Sought is "For Use" in a Foreign Proceeding...........................................................................15

    C.    Petitioners are "Interested Person[s]." ...............................15

II.    The Discretionary *Intel* Factors Weigh in Favor of Discovery....................16

    A.    Respondent Is a Non-Participant in the Appraisal Proceeding...........................................................................16

    B.    The Cayman Islands Court Is Receptive to the Requested Discovery. .........................................................................17

    C.    Petitioners are Not Circumventing Foreign Proof-Gathering Restrictions.......................................................................18

    D.    The Subpoenas are Not Unduly Burdensome.....................19

CONCLUSION.............................................................................21

1

**<u>TABLE OF AUTHORITIES</u>**

2

Cases

3

*Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd.*,
4 785 F. Supp. 2d 434 (S.D.N.Y. 2011).....................................................................18

5
*Brandi-Dohrn v. IKB Deutsche Industriebank AG*,
6 673 F.3d 76 (2d Cir. 2012)......................................................................................17

7
*Euromepa, S.A. v. R. Esmerian, Inc.*,
8 51 F.3d 1095 (2d Cir. 1995)..............................................................................16, 19

9
*Gushlak v. Gushlak*,
10 486 F. App'x 215 (2d Cir. 2012)............................................................................18

11
*HRCHainan Holding Co., LLC v. Yihan Hu*,
No. 19-mc-80277-TSH, 2020 WL 906719 (N.D. Cal. Feb. 25, 2020)..................18
12

13
*In Matter of Appl. of Action & Prot. Found.*, No. C 14–80076 MISC EMC (LB),
2014 WL 2795832 (N.D. Cal. June 19, 2014) .......................................................13
14

15
*In re Accent Delight Int'l Ltd.*,
869 F.3d 121 (2d Cir. 2017).....................................................................................14
16

17
*In re Application of Athos Asia Event Driver Master Fund*,
No. 4:21-MC-00153-AGF, 2021 WL 1611673 (E.D. Mo. Apr. 26, 2021) ...........17
18

19
*In re Application of Athos Asia Event Driven Master Fund*,
No. 1:21-MC-00208-GBF, ECF 8 (S.D.N.Y. Mar. 3, 2021).................................18

20
*In re Application pursuant to 28 U.S.C. 1782 of Japan Display Inc.*,
21 2021 WL 4391882 (C.D. Cal. Apr. 5, 2021)..............................................12, 16, 17

22
*In re Bayerische Motoren Werke AG*,
No. MC-22-00016-PHX-SPL, 2022 WL 1092804 (D. Ariz. Apr. 12, 2022).........19
23

24
*In re del Valle Ruiz*,
939 F.3d 520 (2d Cir. 2019)....................................................................................14
25

26
*In re Ex Parte Application of Nouvel, LLC*, No. 22-MC-0004-MCS(EX), 2022 WL
3012521 (C.D. Cal. June 8, 2022), *report and recommendation adopted*, 2022 WL
27 2901715 (C.D. Cal. July 22, 2022) ........................................................................18

28

3

*In re Ex Parte Appl. Varian Med. Sys. Int'l AG*,
   No. 16-mc-80048-MEJ, 2016 WL 1161568 (N.D. Cal. March 24, 2016) ............ 16

*In re FourWorld Event Opportunities, LP*,
   No. 21-mc-00283-RGA, ECF No. 5 (D. Del. July 23, 2021) .................................. 6

*In re Ibrahim*,
   No. 2:22-mc-00192-DSF-MAA, 2002 WL 35660985 (C.D. Cal. Oct. 31, 2002).. 13

*In re Koninklijke Philips N.V.*,
   No.: 17-MC-1681-WVG, 2018 WL 620414 (S.D. Cal. Jan. 30, 2018)................. 17

*In re Mut. Assistance of Local Court of Wetzlar, Germany*,
   17–mc–00078–SKO, 2018 WL 2183966 (E.D. Cal. May 11, 2018) .................... 13

*In re Nouvel, LLC*,
   No. 2:22-MC-00004-MCS-E, 2022 WL 2901715 (C.D. Cal. July 22, 2022) ........ 15

*In re Penner*,
   2017 WL 5632658 (D. Mass. Nov. 22, 2017)........................................................ 17

*In re Pioneer Corp. v. Technicolor, Inc.*,
   No. LA CV18-04524 JAK (SSx), 2018 WL 4961911 (C.D. Cal. Sept. 12, 2018). 15

*In re Platinum Partners Value Arbitrage Fund L.P.*,
   583 B.R. 803 (Bankr. S.D.N.Y. 2018) ................................................................. 17

*In re Republic of Ecuador*,
   No. C-10-80225, 2010 WL 3702427 (N.D. Cal. Sept. 15, 2010).......................... 15

*In re Request for Judicial Assistance from the Seoul Dist. Criminal Court*,
   555 F.2d 720 (9th Cir. 1977).................................................................................. 14

*Intel Corp. v. Advanced Micro Devices, Inc.*,
   542 U.S. 241 (2004) ......................................................................................passim

*Siemens AG v. Western Digital Corp.*,
   No. 8:13-cv-01407-CAS-(AJWx), 2013 WL 5947973 (C.D. Cal. Nov. 4, 2013). 14,
   17, 18

*Stockinger v. Toyota Motor Sales, U.S.A., Inc.*,
   No. 18MC00084VAPKSX, 2018 WL 6517106 (C.D. Cal. Aug. 15, 2018) .......... 18

APPLICATION FOR AN ORDER OF JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782

*TS Prod., Inc. v. Champion Fiberglass, Inc.*,
309 F.R.D. 527 (N.D. Cal. 2015) ................................................................ 18

*Universal Church, Inc. v. Standard Constr. Co. of San Francisco, Inc*,
No. 14-CV-04568-RS (KAW), 2015 WL 6167968 (N.D. Cal. Oct. 21, 2015) ...... 18

Statutes

28 U.S.C. § 1782 ............................................................................... passim

Rules

F.R.C.P. 26(b)(1) ................................................................................... 19

APPLICATION FOR AN ORDER OF JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782

**APPLICATION**

Petitioners respectfully submit this Application pursuant to 28 U.S.C. § 1782 to take limited discovery from entities found in this District for use in connection with an appraisal proceeding filed in the Grand Court of the Cayman Islands (the "**Cayman Court**") on November 10, 2020 (the "**Appraisal Proceeding**").   In the Appraisal Proceeding, Petitioners (along with other dissenting shareholders) seek a determination of the fair value of their former shareholdings in 58.com ("**58.com**" or the "**Company**"), a Cayman Islands company that was delisted from the New York Stock Exchange and taken private on September 17, 2020.  Petitioners' shares were forcibly canceled through an $8.7 billion merger orchestrated by the Company's CEO and several private equity funds (the "**Merger**").

In the Appraisal Proceeding, Petitioners and other dissenting shareholders will assert that the Merger was coercive and fundamentally unfair to minority shareholders, with respect to both the Merger price, which significantly undervalued 58.com's shares, and the process to approve the Merger.  Through this Application, Petitioners seek to take the deposition of Li (Lily) Dong ("**Respondent**"), a director of 58.com and a member of the Special Committee that approved the merger.  Respondent has knowledge that is relevant to the Appraisal Proceeding, in which the Cayman Court will examine both the fairness of the Merger consideration and also the process undertaken by the Company to approve the Merger.

Section 1782 authorizes this Court to order discovery from any person that resides or is found in this district to assist with proceedings before foreign tribunals. Petitioners' Application meets all of the statutory requirements of Section 1782: (i) Respondent "resides or is found" in this District; (ii) the Requested Discovery is "for use" in a foreign proceeding, namely the Appraisal Proceeding; and (iii) Petitioners, each of which is a party to the Appraisal Proceeding, easily meet the standard for an "interested person" under the statute.  In addition, each of the Supreme

6

1   Court's factors that guide this Court's exercise of discretion under Section 1782
2   weighs decisively in favor of granting Petitioners' Application.  *See Intel Corp. v.*
3   *Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004) ("*Intel*").

4       *First*, Petitioners seek discovery from a "nonparticipant" in the foreign action.
5   *Id.*  Respondent is not a party in the Appraisal Proceeding or otherwise subject to the
6   jurisdiction of the Cayman Court.  This is a sufficient basis for the Court to hold that
7   the first factor is satisfied.

8       *Second*, there is no indication, let alone the required "authoritative proof,"
9   suggesting that the Cayman Court might be unreceptive to Section 1782 assistance.
10  *Id.*  To the contrary, as established in the expert declaration of Justice Ingrid Mangatal
11  (Ret'd) submitted in the Related Action, (1) Petitioners *prima facie* have the right to
12  gather evidence pursuant to Section 1782 to the Cayman Court in support of their
13  claims, and (2) admissibility of such evidence will be judged by the same threshold of
14  relevance and narrow exclusionary rules applicable to all other evidence presented to
15  the Court.  No court in the Cayman Islands considering an appraisal application has
16  ever excluded evidence because it was obtained using Section 1782.[1]

17      Indeed, the Directions Order from the Grand Court in the Appraisal Proceeding
18  specifically contemplates that the parties will use Section 1782 to obtain evidence for
19  use in that proceeding, the Petitioners have done so in related Section 1782
20  proceedings, and the Company has intervened in those actions, in each case, expressly
21  taking no position as to the propriety of Section 1782 discovery.  This is consistent
22  with recent decisions from Cayman Islands appraisal cases, decisions of other U.S.
23  courts finding that Cayman courts are receptive to Section 1782 evidence, and
24  decisions of courts across the country in related Section 1782 proceedings, which have

25

26  [1] Justice Mangatal's declaration was submitted as part of applications in related Section 1782
    proceedings for discovery in connection with the Appraisal Proceeding at issue here, including in
27  *In re FourWorld Event Opportunities, LP*, No. 21-mc-00283-RGA, ECF No. 5 (D. Del. July 23,
    2021) ("**Mangatal Decl.**").

28

found that this Cayman court is receptive to Section 1782 discovery for this Appraisal Proceeding.

*Third*, the Application is not concealing any improper attempt to circumvent any foreign discovery restrictions on proof gathering. *Intel*, 542 U.S. at 264. The requested discovery does not implicate any privilege or special protection that would make it improper under Cayman Islands law.

*Fourth*, the proposed discovery is not unduly burdensome. *Id.* To the contrary, the subpoena is narrowly tailored to seek information directly relevant to the critical issues in the Appraisal Proceeding—namely testimony from Respondent about the Special Committee's negotiation, consideration, and approval of the Merger. Depositions are frequently granted under Section 1782.

## BACKGROUND

### A.    Parties to the Foreign Proceeding

Petitioners are funds that invested in 58.com and owned 58.com shares immediately before the effective date of the Merger that is the subject of Appraisal Proceeding. *See* Declaration of Harry Rasmussen in Support of Petitioners' Application ("**Rasmussen Decl.**") ¶ 4. Petitioners are respondents in the Appraisal Proceeding. *Id.* ¶ 4. Before the Merger, 58.com—China's largest online classifieds business—was a publicly traded corporation incorporated in the Cayman Islands. *Id.* ¶¶ 11–12. The Company's American Depository Shares ("**ADS**") were traded on the New York Stock Exchange. *Id.* ¶ 12. Jinbo Yao, the Company's CEO and founder, historically maintained significant control over the voting shares of 58.com. *Id.* ¶ 13.

### B.    The Merger

On June 15, 2020—three months after the world was plunged into the COVID-19 global pandemic, which had a temporary negative impact on the demand for the Company's online classifieds services and thus its share price—the Company announced that it had entered into a merger agreement through which 58.com would

be acquired by Mr. Yao along with a consortium of private equity funds (the "**Buyer Group**"). *Id.* ¶ 16.  In addition to Mr. Yao, the Buyer Group also included funds wholly owned and controlled by Warburg Pincus and General Atlantic—two New York–based private equity firms—along with Ocean Link Partners, a China-based private equity firm for which Respondent is a director.  As noted, through Mr. Yao, the Buyer Group collectively controlled over 44% of the Company's voting shares as of August 7, 2020. *Id.* ¶ 17.

The announcement stated that on the effective date of the Merger, 58.com's publicly traded ADS—equity shares of a foreign company held by a U.S. depositary bank available for purchase by U.S. investors—would be canceled in exchange for the right to receive $56 per ADS.  *Id.* ¶ 18.  Under the terms of the Merger, 58.com was to become a wholly owned subsidiary of a company called Quantum Bloom Group Ltd., which would be beneficially owned by the Buyer Group, including Mr. Yao, Warburg Pincus, General Atlantic, Ocean Link, and others.

The lead-up to the Merger announcement was characterized by a flawed process designed to engineer the management buyout desired by Mr. Yao and his private equity partners.  On March 24, 2020, the Company engaged Kaihui Limited ("**Kaihui Limited**") as its consultant to explore strategic transactions.  On April 2, 2020, Kaihui Limited contacted Ocean Link; incredibly, that very evening, Ocean Link submitted a proposal to acquire all the outstanding shares of the Company at $55 per share, an offer clearly designed to opportunistically capitalize on a temporary depression on 58.com's trading prices associated with the coronavirus outbreak, which immediately before, on January 16, 2020, were in excess of $69 per share.  The Company then decided to create a Special Committee of independent board members, which would be tasked with considering the Merger.  However, there were <u>no</u> independent board members at the time.  The Company consequently appointed two new board members: Li (Lily)

1  Dong and Robert Frank Dodds, Jr. who, together, comprised the entire Special
2  Committee.

3  Other features of the Merger process give rise to significant concern. The
4  Special Committee treated Kaihui Limited as its advisor and agent throughout its
5  negotiations with the Buyer Group, even though Kaihui Limited was hired by the same
6  members of the Company's management that would later propose the transaction as
7  part of the Buyer Group. No effort was undertaken to shop the Company to competing
8  bidders to ensure that 58.com shareholders received maximum value for their shares.
9  Ultimately, the Special Committee and the Buyer Group agreed to a purchase price of
10 $56 per share, but only after removing a critical protection that would have required
11 approval by a majority of the minority shareholders (the "**MoM Condition**") to protect
12 minority shareholder rights, making the approval of the transaction almost certain
13 regardless of support from the minority shareholders. As previously noted, the Buyer
14 Group that took 58.com private collectively held 44% of the Company's voting shares,
15 and other principal shareholders (who collectively held 28% of the Company's voting
16 power) were incentivized to vote for the Merger because they were not required to
17 exchange their shares for the inadequate Merger consideration (i.e., their shares were
18 rolled over into the merged company). Thus, the controlling shareholders were able
19 to impose the Merger on minority shareholders without their consent. The negotiation
20 process took only 74 days, and the price negotiation lasted only 10 days, a staggeringly
21 rushed timeline designed to undervalue the Company and squeeze out minority
22 shareholders.

23 Although minority shareholders expressed concern about the deal, on
24 September 7, 2020, the Company held an extraordinary general meeting of
25 shareholders (the "**EGM**"), at which time 58.com shareholders voted on whether to
26 approve the Merger. Rasmussen Decl. ¶ 28. Only 15% of all shareholders that were
27 unaffiliated with either the Buyer Group or the Rollover Shareholders voted in favor
28

of the transaction.  *Id.*  Despite widespread opposition from the unaffiliated shareholders, the transaction was forced through.  Accordingly, Petitioners' shares and the shares of all remaining stockholders—other than Members of the Buyer Group— were canceled in exchange for the Merger consideration effective September 17, 2020, at a price Petitioners allege is substantially below their fair value. *Id.* ¶ 24.

As alleged in the Appraisal Proceeding, the Merger price significantly undervalued 58.com shares, was the result of a significantly flawed process, and was coercive and unfair to 58.com's minority shareholders.

## C.   Petitioners' Cayman Islands Appraisal Proceeding

Under Section 238 of the Companies Act, the Cayman Court in the Appraisal Proceeding has a statutory obligation to determine the fair value of the dissenting shareholders' shares.  As described in the declaration of Justice Mangatal, the parties to the Appraisal Proceeding—including the Petitioners and 58.com—will submit evidence, expert testimony, and legal briefs to the Cayman Court, which will weigh the evidence and determine the fair value of Petitioners' shares. *See* Declaration of Harry Rasmussen ("**Rasmussen Decl.**") Ex. C, Declaration of Justice Ingrid Mangatal ("**Mangatal Decl.**") ¶ 17.  In assessing fair value in a Cayman Islands Appraisal Proceeding, the Cayman Court will examine the fairness (or lack thereof) of the process that led 58.com's board to approve the Merger.  In doing so, the Cayman Court will consider the fairness of the Merger to 58.com's minority stockholders and will likely focus on, among other things, the process by which the 58.com board and/or Special Committee negotiated and approved the Merger price, and the valuations relied upon by the 58.com Special Committee and the Buyer Group.

## D.   Discovery in the Cayman Islands Appraisal Proceeding

There is no automatic right to discovery in Section 238 proceedings similar to pre-trial discovery in the United States.  Instead, only upon Court order is a party to the proceeding required to provide discovery of "documents which are in their

11

possession, custody or power relating to any matter in question between them in the action."  Mangatal Decl. ¶ 32 (citing Grand Court Rules ("GCR") Order 24 rule 3). Discovery of non-parties, particularly those like Respondent that are outside the Court's jurisdiction, is very limited, subject to cumbersome procedures, and rarely used.   *Id.* ¶ 43.  The discovery process in the Appraisal Proceeding is ongoing. Rasmussen Decl. ¶¶ 39–40.

Nevertheless, Cayman Courts remain receptive to evidence obtained through other judicial measures such as 28 U.S.C. § 1782.  Indeed, as explained by Justice Mangatal, "Cayman courts have had the opportunity to consider specifically the use of 28 U.S.C. § 1782 in connection with Cayman Islands proceedings and have held that it is permissible for a litigant in a Cayman Islands proceeding to exercise any rights it may have under 28 U.S.C. § 1782 to obtain relevant evidence for use in proceedings in the Cayman Islands."  Mangatal Decl. ¶ 54.  All relevant evidence obtained through this Application, other than that for which privilege can be asserted, will be admissible in the Cayman Court. *Id.* ¶ 53.  Furthermore, Cayman Islands courts expect the parties to obtain the evidence they believe is necessary to prosecute their case. *Id.* ¶ 66.  There is no requirement to obtain permission from a Cayman Islands court before seeking relevant evidence abroad in the U.S. under 28 U.S.C. § 1782.  *Id.*  And indeed, the court order that governs discovery in the Appraisal Proceeding (the "Directions Order") contains a provision that expressly contemplates the use of Section 1782.  *See* Rasmussen Decl., Ex. B ¶ 50.

**E.     Respondent and the Discovery Sought**

As described in the Proxy Statement, Respondent was one of a two-member Special Committee that approved the Merger.  Proxy at 27.

Petitioners seek limited discovery from the Respondent, targeted squarely at issues central to the Appraisal Proceeding.  As discussed above, as one of only two members of the Special Committee, Respondent was directly involved in and

1   responsible for the Company's decision to approve the Merger and played a hands-on
2   role in the decision-making and negotiating process that the deal required, including
3   decisions regarding the ultimate Merger price.  Proxy at 26–35 (describing Special
4   Committee's activities in considering the fairness of the Merger); *see also, e.g.*, Proxy
5   at 34 ("Later that day, Ms. Dong called representatives of Warburg Pincus, and Mr.
6   Dodds called representatives of General Atlantic, respectively, to further negotiate for
7   a further increase in the purchase price, as well as the removal of the Dissenters' Rights
8   Condition and inclusion of the Approval by a Majority of the Unaffiliated
9   Condition.").

10      Petitioners' Application thus seeks deposition testimony from Respondent,
11   regarding: (i) the fairness of and the process engaged in to reach the Merger price,
12   including the independence of the Special Committee; (ii) 58.com's valuation,
13   including concerning any forecasts of the Company's future performance; and
14   (iii) information pertaining to any alternative bids to acquire the Company.

## ARGUMENT

16      28 U.S.C. § 1782 permits U.S. district courts to grant discovery for use in a
17   foreign proceeding.  *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247
18   (2004).  A Section 1782 application must satisfy three prima facie elements: (1) the
19   discovery is sought from a person that resides or is found within the District; (2) the
20   discovery is for use before a foreign tribunal; and (3) the applicant is an "interested
21   person."  *In re Application pursuant to 28 U.S.C. 1782 of Japan Display Inc.*, 2021
22   WL 4391882, at *2 (C.D. Cal. Apr. 5, 2021) (citing *Intel*, 542 U.S. at 246).

23      If the statutory requirements are met, the court considers four discretionary
24   "*Intel*" factors: (1) whether the person from whom discovery is sought is a
25   "nonparticipant in the matter arising abroad"; (2) "the nature of the foreign tribunal,
26   the character of the proceedings underway abroad, and the receptivity of the foreign
27   government or the court or agency abroad to U.S. federal-court judicial assistance";

28

1   (3) whether the request "conceals an attempt to circumvent foreign proof-gathering

2   restrictions or other policies of a foreign country or the United States"; and (4) whether

3   the request is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264–65.  No one

4   factor should be given more weight than the others, and no one factor is dispositive.

5   *See In re Mut. Assistance of Local Court of Wetzlar, Germany*, 17–mc–00078–SKO,

6   2018 WL 2183966, at *3 (E.D. Cal. May 11, 2018); *see also In Matter of Appl. of*

7   *Action & Prot. Found.*, No. C 14–80076 MISC EMC (LB), 2014 WL 2795832, at *4

8   (N.D. Cal. June 19, 2014) (noting that the *Intel* factors "involve overlapping

9   considerations, are considered collectively by the court in exercising its discretion, and

10  are not stand-alone categorical imperatives.").

11  **I.    The Application Satisfies the Three Statutory Requirements of 28 U.S.C.**

12  **§ 1782.**

13  **A.    Respondent "Resides" or "Is Found" in This District.**

14      For a natural person, Section 1782's requirement that a respondent "reside[s] or

15  be found" in a district is satisfied when a person is a resident of the district.  *See*

16  *Siemens AG v. Western Digital Corp.*, No. 8:13-cv-01407-CAS-(AJWx), 2013 WL

17  5947973, at *2 (C.D. Cal. Nov. 4, 2013) (holding first statutory factor was satisfied

18  because respondent resided in the Central District of California); *In re Ibrahim*, No.

19  2:22-mc-00192-DSF-MAA, 2002 WL 35660985, at *4 (C.D. Cal. Oct. 31, 2002)

20  (same).  According to a licensed private investigator's database search, Respondent

21  currently resides, and has resided since at least 2018, in this District.  Burtis Decl. ¶ 3.

22  Respondent has represented to the state of Delaware in registering an LLC that she

23  resides in California.  *Id.*  That LLC, called "Opal Advance Investments, LLC," owns

24  two properties in California, including the property at which Respondent resided from

28

APPLICATION FOR AN ORDER OF JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782

1  April 2018 to April 2019 and the property at which Respondent currently resides.  *Id.*

2  Respondent thus "resides or is found" in this District.[2]

3  **B.   The Discovery Sought Is "For Use" in a Foreign Proceeding.**

4  To establish that the information sought is "for use" in a foreign proceeding,

5  Petitioner must merely show that it has "the procedural right to submit the requested

6  documents to" the foreign tribunal.  *In re Accent Delight Int'l Ltd*., 869 F.3d 121, 132

7  (2d Cir. 2017).   A Section 1782 petitioner is not required to demonstrate that the

8  information sought would be discoverable or admissible in the foreign proceedings.

9  *In re Request for Judicial Assistance from the Seoul Dist. Criminal Court*, 555 F.2d

10  720, 723 (9th Cir. 1977) ("[F]ederal courts, in responding to [§ 1782] requests, should

11  not feel obliged to involve themselves in technical questions of foreign law relating to

12  . . . the admissibility before [foreign] tribunals of the testimony or material sought.").

13  Instead, the district court considers "the *practical ability* of an applicant to place a

14  beneficial document—or the information it contains—before a foreign tribunal.").

15  Petitioners have already relied upon evidence from related Section 1782 proceedings

16  in the Appraisal Proceeding, and the discovery process in the Appraisal Proceeding is

17  ongoing.   Rasmussen Decl. ¶¶ 39–40.   The Requested Discovery is therefore plainly

18  "for use" in the Appraisal Proceeding, and Petitioners have thus satisfied the second

19  statutory requirement.

20  **C.   Petitioners Are "Interested Person[s]."**

21  "Litigants are included among, and may be the most common example of, the

22  'interested person[s]' who may invoke § 1782."  *Intel*, 542 U.S. at 256; *In re Pioneer*

23  *Corp. v. Technicolor, Inc.,* No. LA CV18-04524 JAK (SSx), 2018 WL 4961911, at *5

---

24  [2] Alternatively, Respondent is "found in" this District.  There does not appear to be binding precedent
25  in this District on whether the "resides or is found" language in Section 1782 means the court must
have personal jurisdiction over the party from whom Petitioners seek discovery.  However, courts in
26  other jurisdictions have found that Section 1782's statutory prerequisite is coextensive with personal
jurisdiction.  *See, e.g., In re del Valle Ruiz*, 939 F.3d 520, 528 (2d Cir. 2019).  This Court has general
27  personal jurisdiction over Respondent based on her "continuous and systematic" contacts with the
forum.  *In re Wireless Facilities, Inc. Derivative Litig.*, 562 F. Supp. 2d 1098, 1102 (S.D. Cal. 2008).

28

15

(C.D. Cal. Sept. 12, 2018) ("An 'interested person' includes, but not limited to, parties in a foreign proceeding") (citing *Intel* at 256). Because Petitioners are claimants in the Appraisal Proceeding, Rasmussen Decl. ¶¶ 4–6, they are "interested persons." All of the statutory elements are thus satisfied here.

## II. The Discretionary *Intel* Factors Weigh in Favor of Discovery.

Once the statutory threshold requirements of Section 1782 are met, a district court considers, in its discretion, whether to order the requested discovery. To do this, the district court looks to the four *Intel* factors. *See Intel*, 542 U.S at 264. Each of the *Intel* factors is discussed below and weighs in favor of granting the Application.

### A. Respondent Is a Non-Participant in the Appraisal Proceeding.

The first *Intel* factor asks whether the party from whom discovery is sought is a party to the foreign proceeding. The reason for this inquiry is because "when the person from whom discovery is sought is a participant in the foreign proceeding . . . the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." *Intel*, 542 U.S. at 264. Respondent is not a party in the Appraisal Proceeding, and therefore will not be subject to party discovery in the Appraisal Proceeding. Mangatal Decl. ¶ 43. Further, because Respondent does not reside in the Cayman Islands, the Cayman Court will not have jurisdiction to compel discovery from her. *Id.* Petitioners, therefore, will not be able to take discovery of Respondent through the Appraisal Proceeding, even though her testimony may be crucial to the issues in that proceeding. Accordingly, this first *Intel* factor weighs in favor of granting the Application. *In re Nouvel, LLC*, No. 2:22-MC-00004-MCS-E, 2022 WL 2901715, at *1 (C.D. Cal. July 22, 2022) ("some parties here are not party to the foreign litigation, and based on the parties' submissions of expert testimony, the Court has some doubt that the requested discovery is or will become available in the foreign courts"); *In re Republic of Ecuador*, No. C-10-80225, 2010 WL 3702427, at *3 (N.D. Cal. Sept. 15, 2010) ("[Discovery target] is not a party in

16

1    the international arbitration, and therefore this factor weighs in the [petitioner's]

2    favor.").

3    **B.     The Cayman Islands Court Is Receptive to the Requested**

4    **Discovery.**

5           The second *Intel* factor requires courts to consider whether the "nature, attitude,

6    and procedures" of the foreign tribunal indicate that it is receptive to Section 1782

7    assistance.  This factor "focuses on whether the foreign tribunal is willing to consider

8    the information sought." *In re Ex Parte Appl. Varian Med. Sys. Int'l AG*, No. 16-mc-

9    80048-MEJ, 2016 WL 1161568, at *4 (N.D. Cal. Mar. 24, 2016).  There is a strong

10   presumption that foreign tribunals will be receptive to evidence obtained in the United

11   States.  "[W]hen evaluating whether foreign tribunals would accept U.S. assistance,"

12   courts do not look for proof that the foreign tribunal will accept the evidence; to the

13   contrary, they "'look for 'authoritative proof that a foreign tribunal would *reject*

14   evidence obtained with the aid of section 1782.'" *Siemens AG v. W. Digital Corp.*,

15   No. 8:13–cv–01407–CAS–(AJWx), 2013 WL 5947973, at *3 (C.D. Cal. Nov. 4, 2013)

16   (quoting *Euromepa, S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095 (2d Cir. 1995)) (emphasis

17   in original).  Absent "*authoritative proof* that a foreign tribunal would reject evidence

18   obtained with the aid of section 1782," courts are to "err on the side of permitting

19   discovery." *Varian Med. Sys.*, 2016 WL 1161568, at *4 (emphasis added); *see also In*

20   *re Japan Display Inc.*, 2021 WL 4391882 at *4 (finding factor favored discovery

21   where there was "no indication that the Beijing Intellectual Property Court would not

22   be receptive to such evidence").  As numerous courts across the country have held,

23   Cayman Islands courts, and the Cayman court in the Appraisal Proceeding in

24   particular, are receptive to discovery under Section 1782.[3]  The receptivity of the

25   Cayman Court to evidence obtained through this Application will be no different.

26   _____

27   [3] *See also In re Platinum Partners Value Arbitrage Fund L.P.*, 583 B.R. 803, 816 (Bankr. S.D.N.Y. 2018) ("Liquidators present unrebutted evidence that, far from being hostile to Cayman litigants seeking evidence under U.S. law, Cayman courts are in fact receptive to evidence obtained through

28

**C.      Petitioners Are Not Circumventing Foreign Proof-Gathering Restrictions.**

The third *Intel* factor looks to "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265. Importantly, the third *Intel* factor is satisfied unless the foreign court actively prohibits the petitioner from gathering the information sought. *In re Japan Display Inc.*, 2021 WL 4391882 at *4; *In re Koninklijke Philips N.V.*, No.: 17-MC-1681-WVG, 2018 WL 620414, at *2 (S.D. Cal. Jan. 30, 2018); *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 82 (2d Cir. 2012); *Intel*, 542 U.S. at 261 ("A foreign nation may limit discovery within its domain for reasons peculiar to its own legal practices, culture, or traditions—reasons [that] do not necessarily signal objection to aid from United States federal courts."); *Siemens AG*, 2013 WL 5947973, at *3. Moreover, "an applicant need not attempt to exhaust the discovery procedures available in the foreign court before invoking section 1782 in federal court." *In re Ex Parte Application of Nouvel, LLC*, No. 22-MC-0004-MCS(EX), 2022 WL 3012521, at *4 (C.D. Cal. June 8, 2022), *report and recommendation adopted*, 2022 WL 2901715 (C.D. Cal. July 22, 2022). The discovery sought does not attempt to circumvent any proof-gathering restrictions in the Cayman Islands. To the contrary, as Justice Mangatal explains, "Cayman courts

_____

U.S. discovery procedures, even if such evidence may not be discoverable under Cayman law."); *Gushlak v. Gushlak*, 486 F. App'x 215, 218 (2d Cir. 2012) (affirming use of Section 1782 applications in connection with Cayman divorce proceedings); *Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd*., 785 F. Supp. 2d 434, 439 (S.D.N.Y. 2011) (granting Section 1782 applications seeking documents for use in Cayman proceedings); *In re Penner*, 2017 WL 5632658, at *3 (D. Mass. Nov. 22, 2017) (finding that the Cayman Court "is open to receiving § 1782 discovery"). Indeed, two district courts recently granted Section 1782 petitioners' applications for both document discovery and a deposition for use in an appraisal proceeding in the Cayman Islands. *See In re Application of Athos Asia Event Driver Master Fund*, No. 4:21-MC-00153-AGF, 2021 WL 1611673, at *1 (E.D. Mo. Apr. 26, 2021) ("There is no indication in the record here that a discovery order would be unwelcome by the Cayman Islands court."); *In re Application of Athos Asia Event Driven Master Fund*, No. 1:21-MC-00208-GBF, ECF 8 (S.D.N.Y. Mar. 3, 2021) (granting Section 1782 petition for discovery for use in Cayman appraisal proceeding).

18

1    expect the parties to obtain the evidence they believe is necessary to prosecute their

2    case" and "[t]hus there is no requirement to obtain permission from a Cayman court

3    before seeking relevant evidence abroad." Mangatal Decl. ¶ 65.

4         **D.     The Subpoenas Are Not Unduly Burdensome.**

5         The final *Intel* factor looks to whether the discovery requests are "unduly

6    intrusive or burdensome." *Intel*, 542 U.S. at 265.  "The scope of discovery permitted

7    under § 1782 is coextensive with the scope of discovery permitted by Federal Rule of

8    Civil Procedure 26(b)(1)." *In re Bayerische Motoren Werke AG*, No. MC-22-00016-

9    PHX-SPL, 2022 WL 1092804, at *2 (D. Ariz. Apr. 12, 2022) (holding discovery

10   requests that were "quite broad" were nonetheless "proportional to the needs of the

11   case" and "within the scope of discovery permitted under § 1782").  The Application

12   seeks testimony within the personal knowledge of Respondent that is relevant to the

13   Merger, which is expressly provided for in Federal Rule of Civil Procedure 45.  "[T]he

14   Rules of Civil Procedure themselves ensure that the length, time and place of the

15   deposition do not impose an undue burden." *HRCHainan Holding Co., LLC v. Yihan*

16   *Hu*, No. 19-mc-80277-TSH, 2020 WL 906719, at *15 (N.D. Cal. Feb. 25, 2020).  For

17   that reason, courts in this Circuit routinely hold that depositions of third parties are not

18   unduly burdensome.  *See, e.g.*, *Stockinger v. Toyota Motor Sales, U.S.A., Inc.*, No.

19   18MC00084VAPKSX, 2018 WL 6517106, at *2 (C.D. Cal. Aug. 15, 2018) ("Mrs.

20   Casper has provided no evidence that her deposition would impose an undue burden

21   on her, other than the mere assertion that this would be so.  Thus, this Court finds that

22   the relevance of Mrs. Casper's independent knowledge to the claims and defenses in

23   the Stockinger Action outweighs any potential burden."); *TS Prod., Inc. v. Champion*

24   *Fiberglass, Inc.*, 309 F.R.D. 527, 532 (N.D. Cal. 2015) (denying motion to quash Rule

25   45 subpoena seeking deposition testimony); *Universal Church, Inc. v. Standard*

26   *Constr. Co. of San Francisco, Inc*, No. 14-CV-04568-RS (KAW), 2015 WL 6167968,

27   at *4 (N.D. Cal. Oct. 21, 2015) ("Defendants' contentions that the deposition is

28

irrelevant and harassing also lack merit.  Plaintiff explains that they seek to depose Teague regarding the knowledge and observations he obtained during his investigation . . . . This is relevant to the claims asserted in this case.").

As one of the two members of the Special Committee, Respondent has personal knowledge of the key issues in the Appraisal Proceeding.  That evidence is proportional to the needs of the Appraisal Proceeding, a multi-billion-dollar dispute.

Moreover, Petitioners are willing to meet and confer with Respondent to address any burden concerns.  If the Court has remaining concerns about undue burden, granting the Application will not preclude Respondent from bringing a motion to quash or modify the discovery sought.  If the Court finds merit to such objections, "it is far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright."  *Euromepa, S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1101 (2d Cir. 1995).

////

////

////

////

////

APPLICATION FOR AN ORDER OF JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CONCLUSION

For the foregoing reasons, Petitioners respectfully request that the Court grant the Application for an order pursuant to 28 U.S.C. § 1782.

Dated: January 26, 2023

By:   */s/ Michelle L. Gearhart*

**PALLAS PARTNERS (US) LLP**
Duane L. Loft*
Duane.Loft@pallasllp.com
Brianna Hills Simopoulos*
Brianna.Simopoulos@pallasllp.com
John McAdams*
John.McAdams@pallasllp.com
75 Rockefeller Plaza
New York, NY 10019
Telephone: (212) 970-2300

**ADAMSKI MOROSKI MADDEN CUMBERLAND & GREEN LLP**
Michelle L. Gearhart
gearhart@ammcglaw.com
6633 Bay Laurel Place
Avila Beach, CA 93424
Telephone: (805) 543-0990

**Pro hac vice* applications forthcoming

*Counsel for Petitioners*

APPLICATION FOR AN ORDER OF JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782